JACOB J. VEITINGER, Respondent, v. JOHN M. WINKLER ET AL., Appellants.

May 7, 1878.

Where a principal and agent are sued for money had and received to plaintiff's use, and the material issue to be tried is whether the agent received the money in question on his own account and paid it to his principal in dis-

charge of an existing debt, or whether it was received by him as agent, and the case is submitted to the jury on instructions which ignore the question as to whether the agent received the money as agent, the judgment will be set aside, though there is evidence tending to prove the essential facts necessary to support the finding.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

ALEX. MARTIN and J. T. TATUM, for appellants.

COLLIER & MUENCH, for respondent.

HAYDEN, J., delivered the opinion of the court.

This is an action for money had and received by the appellants, Winkler and the United States Life Insurance Company, to the use of the respondent. The petition alleges that Winkler was the agent of the appellant company at St. Louis; that in February, 1874, that company, jointly with Winkler, collected and converted to their use the amount sued for. The answers were denials. There was testimony of the respondent tending to show that the respondent had had in the World Insurance Company, of which Winkler had been agent, two policies of life insurance; that in 1873 the World Insurance Company discontinued its agency at St. Louis, and that Winkler undertook the agency of the appellant company, retaining one Reck as sub-agent; that Winkler and Reck, wishing to have the respondent insure in the appellant company, made representations to the respondent, the result of which was that he surrendered his policies in the World Company in order to take insurance in the appellant company. Two checks, the amount of which corresponded to the sum here sued for, were sent by the World Company from New York to Winkler, to be handed to the respondent, they being the surrender value of the respondent's policies in the World Company. Reck testified that he took to the respondent the two policies in the appellant company, for which, in place of the World policies, the respondent had made application to

Winkler, and also the checks, which were made payable to the respondent. There is testimony of Reck tending further to show that the respondent accepted one of these policies and paid the premium for it, and that Reck returned this premium to Winkler; that as to the second policy the respondent did not accept it; and that Reck returned this policy, and with it the checks, to Winkler, in order that the respondent and Winkler might themselves arrange the matter as to the second policy, the respondent indorsing the checks before he delivered them to Reck. Winkler received the checks as indorsed, and at the same time the second policy. When the respondent saw Winkler the respondent refused to accept the second policy, and endeavored to obtain the checks, but Winkler had deposited them in bank to the credit of the appellant company. Winkler testified, and on the part of the appellants it was contended, that these checks were paid as part of the premium upon the policy of the appellant company accepted by the respondent. The company was credited with the amount; but it was not shown that the checks ever came to the company's knowledge, as checks. The company received the cash proceeds, the checks being paid on presentation in New York. The jury found for the respondent.

The record is in this case encumbered with a great amount of evidence, but the testimony necessary to present the questions involved could have been comprised in a few pages. The case was put to the jury on a wrong theory. It may be, indeed, that the verdict was for the proper party, as is urged, but the appellants have a right to insist that the real legal issues should not have been disregarded, as they were. The instructions given for the respondent left out of view the question — which is the essential question in the case — whether Winkler, the agent of the appellant company, in receiving the checks, received them *as* the agent of the appellant company. It does not matter whether Winkler was agent of the company at the time he re-

ceived the checks from Reck, unless in addition to this the act of receiving the checks was an act done by Winkler as agent, and within the scope of his agency. Thus, if Winkler, though such agent, received the checks on his own account and without reference to the company or their business, and, having so received them, paid them or their proceeds over to the company, as he might have paid them to any innocent person to whom he happened to owe money, of course the company would not be responsible in the present action. The link of agency, essential in the chain of the respondent's evidence, would be wanting. The privity connecting the company with the respondent would not exist. That there was evidence in the case tending to prove the essential fact is clear. Reck testifies that the reason why he returned the checks to Winkler was "because it was a transaction between Veitinger and Winkler about the second policy;" that he "left it there for Veitinger to go down and get his checks and settle the second policy." If Winkler succeeded in inducing the respondent to accept the second policy, then the checks could be taken in part payment of the premium. On this hypothesis of course Winkler was acting for the company and within the scope of his agency. According to Reck, the premium upon the first policy had been fully paid and Winkler received it. It may be inferred, though this inference is not essential to the respondent's case, that Reck, in returning the checks, wished, by giving Winkler possession of them in connection with the second policy, to give the latter a position from which he could, after the respondent's refusal, more favorably negotiate for the company in the matter of inducing the respondent to accept the second policy. But whatever the fact may be in this respect, the respondent was entitled to the benefit of Reck's testimony; and it is immaterial that the respondent himself says that he never intended to take the second policy. If the respondent never gave the checks to Reck with any design that they

should be paid on the second policy, it may still be that when Winkler received the checks from Reck he did so with a view of holding them in connection with the second policy, and appropriating them, as agent for the company, as premium on that policy. That Winkler received the checks "in payment of premium upon life insurance," as put in the appellants' second instruction, it was not necessary for the respondent to show. Winkler had authority to place the policy and negotiate about its acceptance, as well as to receive cash checks in the absolute payment of premiums ; and the inference is reasonable that he received the checks for the company, if what Reck says as to the connection between the checks and the second policy is true. There is no dispute as to the facts that Winkler actually received the checks and deposited them as cash in bank to account of the company.

The instructions which relate to the company all leave out of view the essential question whether Winkler in receiving the checks received them as agent for the company. Under these instructions as given, the jury might have believed that the checks had no connection with the second policy, and yet have found against the company, when they should have found only against Winkler. Again, if Winkler received the checks as agent for the company, such receipt would not make him individually liable as co-defendant with the company. The respondent should adhere to one theory, and the instructions should be consistent. If both defendants are held, the jury must find facts on which in law both are liable. It is unnecessary to discuss the question on what state of facts presented by the evidence both of the defendants might be liable as charged in the petition ; it is sufficient that no state of facts was put to the jury on which both could be liable as found by the verdict.

The judgment is reversed and the cause remanded. All the judges concur.